IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAIED SHOAIB REZAEE,                    )
                                        )
        Petitioner,                     )
                                        )
    v.                                  )
                                        )        1:26-cv-277 (AJT-WBP)
PAMELA BONDI, *et al.*,                 )
                                        )
        Respondents.                    )

## ORDER

Before the Court is Petitioner Saied Shoaib Rezaee's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody that began on December 3, 2025 on the grounds that his ongoing detention at Farmville Detention Center violates the Immigration and Nationality Act (the "INA"), the Administrative Procedure Act (the "APA"), and his constitutional due process rights. Upon consideration of the Petition, the memoranda in support thereof and in opposition thereto, and for the reasons stated below, the Petition is GRANTED.

## I.    BACKGROUND

Petitioner is a 28 year-old native and citizen of Afghanistan who entered the United States without inspection on August 26, 2024. [Doc. No. 1] ¶ 16–17. That same day, on August 26, 2024, Customs and Border Protection officers encountered Petitioner, detained him, and served him with a Form I-860, Notice of Order of Expedited Removal pursuant to Section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1)(A). [Doc. No. 8-1] ¶ 6. On October 23, 2024, before Petitioner was removed, he expressed a fear of returning to Afghanistan and was referred to USCIS for a credible fear interview under 8 U.S.C. § 1225(b)(1)(A)(ii). *Id.* ¶ 7. Petitioner was detained while he awaited his

credible fear interview. *Id.* On November 13, 2024, an asylum officer determined that Petitioner had a credible fear of returning to Afghanistan. *Id.* ¶ 8. As a result, on November 15, 2024, USCIS issued Petitioner a Notice to Appear ("NTA") that vacated the Section 235(b)(1) expedited removal order and charged him with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(6)(A)(i) (as a noncitizen who has not been admitted or paroled) and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (as a noncitizen who, at the time of application for admission to the United States was not in possession of any valid entry document). [Doc. No. 1-4]. It also placed him in removal proceedings pursuant to Section 240 of the INA, 8 U.S.C. § 1229a. [Doc. No. 8-1] ¶ 9; [Doc. No. 1-4].

As reflected above, the NTA designated the Petitioner as a noncitizen "present in the United States who has not been admitted or paroled.[1] That status changed on November 21, 2024, when Petitioner was issued an "Interim Notice Authorizing Parole" under Section 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A))[2], stating in relevant part:

> Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion. ICE may also terminate parole on notice prior to the automatic termination date. Parole is entirely within the discretion of ICE and can be terminated at any time and for any reason. Your parole is not valid for work authorization and is not an admission in lawful status.

[Doc. No. 1-5]. The parole was conditioned on Petitioner "complying with the terms and conditions of [his] release," which included notifying ICE and an immigration judge of any address

---

[1] The NTA distinguishes between three types of individuals: (1) an "arriving alien;" (2) "an alien present in the United States who has not been admitted or paroled;" and (3) an alien "admitted to the United States but removable." *See* [Doc. No. 1-4 at 2].

[2] 8 U.S.C. § 1182(d)(5)(A) provides that a noncitizen may be released on parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 1182(d)(5)(A). Humanitarian parole "shall not be regarded as an admission of the alien," and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

correction or change, and reporting for every scheduled hearing before the immigration court and every appointment with ICE, which Petitioner complied with. *Id.*; [Doc. No. 1] ¶ 20.

On March 6, 2025, while released on parole, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with the Immigration Court, which is scheduled for a merits hearing in September 2026. [Doc. No. 1] ¶ 20.

On November 21, 2025, Petitioner's parole expired by its terms and was not extended or renewed. *Id.* ¶ 22. On December 3, 2025, Petitioner attended a check-in appointment with ICE, where he was taken into custody. *Id.* Petitioner remains detained at the Caroline Detention Facility and has not received a bond hearing or other individualized consideration of the basis for his detention since the start of his detention. *Id.* ¶ 23.

## II.    LEGAL STANDARD

"[A] federal court may grant habeas relief only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F. 4th 209, 213 (4th Cir. 2023) (internal citations omitted).

## III.    DISCUSSION

Petitioner claims that his detention is governed by 8 U.S.C. § 1226, rather than 8 U.S.C. § 1225, and is therefore entitled to an individualized bond hearing under the INA, APA, and Constitution.[3] [Doc. No. 1]. In opposition, Respondents contend that this Court lacks jurisdiction under 8 U.S.C. § 1252 and that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) until the immigration court adjudicates his asylum application. [Doc. No. 8].

---

[3] Because the Court resolves Petitioner's claims under the INA and the Constitution, it does not address the validity of his APA claim.

3

This Court has previously rejected Respondents' jurisdictional challenges under § 1252, and does so again here, concluding that § 1252(a)(2)(A)(iv) does not deprive it of jurisdiction since "Petitioner does not challenge the procedures or policies through which DHS implements expedited removal under 8 U.S.C. § 1225(b)(1)," and instead "challenges whether he is subject to those policies in the first place and whether his continued detention . . . violates his right to due process." *Luna Sanchez v. Bondi*, No. 1:25-CV-018888-MSN-IDD, 2025 WL 3191922, at *3 (E.D. Va. Nov. 14, 2025).

As to the merits, the central question is whether Petitioner is subject at this point to mandatory detention under Section 1225 or discretionary detention under Section 1226, with a right to a bond hearing.

8 U.S.C. § 1225(a) provides that "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). As previously recognized by this Court, "[a]pplicants for admission are either covered by Section 1225(b)(1) or 1225(b)(2)." *Quispe v. Crawford*, No. 1:25-CV-1471-AJT-LRV, 2025 WL 2783799, at *4 (E.D. Va. Sept. 29, 2025). By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Unlike noncitizens subject to § 1225(b), individuals who fall under § 1226(a) are not subject to mandatory detention. 8 U.S.C. § 1226(a).

Section 1225(b)(1), titled "Inspection of Aliens arriving in the United States and certain other aliens who have not been admitted or paroled," which Respondents contend governs this case, applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *Jennings*, 583 U.S. at 287, as well as to other

4

noncitizens who receive special designation by the Attorney General. 8 U.S.C. § 1225(b)(1)(A)(iii). "Applicants for admission" covered by § 1225(b)(1), *viz.*, "[a]liens arriving in the United States and certain other aliens who have not been admitted or paroled," are subject to mandatory detention throughout removal proceedings and are removed "without further hearing or review" unless the person "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that person is referred for an interview to an asylum officer under § 1225(b)(1)(B). 8 U.S.C. § 1225(b)(1)(A)(i)-(ii); *see also* 8 C.F.R. § 208.30. "If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution . . . the [noncitizen] shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). If the asylum officer finds an applicant's asserted fear to be credible, the noncitizen will be processed through regular—rather than expedited—removal proceedings pursuant to 8 U.S.C. § 1229a. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020) (citing 8 C.F.R. § 208.30(f)). Section 1229a, titled "Removal proceedings," provides that "unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted into the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a.

Relying solely on 8 U.S.C. § 1225(b)(1)(B)(ii), Respondents contend that Petitioner is again subject to mandatory detention because he was initially processed for expedited removal pursuant to § 1225(b)(1)(A), and he now has an asylum application pending (after receiving a positive fear determination of removal to Afghanistan), thereby triggering that section's mandatory detention provision. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the

5

alien shall be detained for further consideration of the application for asylum."). But that position depends entirely on whether Petitioner's detention remains governed by Section 1225.

The application in this case of § 1225(b)(1) and its mandatory detention requirement, cannot be reconciled with the text of § 1225(b)(1) or § 1226, as interpreted by the Supreme Court in *Jennings v. Rodriquez*, as well as the Respondents' own treatment and processing of the Petitioner, including his removal out of Section 1225 and placement into removal proceedings governed by Section 1229a. In that regard, § 1225(b)(1) by its plain terms applies only to noncitizens "arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1) (paragraph header titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled"). Section 1226(a), on the other hand, governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. *Jennings*, 583 U.S. at 303.

Here, Petitioner arrived in the United States without inspection and was subsequently paroled, which is "not regarded as an admission" to the United States, 8 U.S.C. § 1182(d)(5)(A). And at the time of Petitioner's detention, he was not "arriving in the United States" within the meaning of 8 U.S.C. § 1225(b)(1). Indeed, as another court assessing similar facts observed, reclassifying an alien as an "arriving alien," despite the fact that he, like the Petitioner, "has already arrived, was paroled, entered, and has now been present in the United States for over a year," after his initial arrival "would try any plain understanding of the term." *See Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) (analyzing plain meaning of the phrase "arriving in the United States" and concluding that "there can be no doubt that upon his parole into the interior of the country, [petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States"). Accordingly, as someone who is "already

6

present in the United States" when detained recently, Petitioner's detention is governed by Section 1226(a).

Moreover, Respondents' own treatment of Petitioner has been inconsistent with any classification as an "arriving alien" subject to mandatory detention under § 1225(b)(1). Petitioner was initially served a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A), and mandatorily detained under that provision, but was subsequently issued a NTA vacating that order, placing Petitioner into removal proceedings under Section 1229a and classifying Petitioner as "an alien present in the United States who has not been admitted or paroled," rather than "an arriving alien." [Doc. No. 1-4] (NTA with box checked that Petitioner's "Section 235(b)(1) order was vacated pursuant to 8 CFR 208.30"). As the Court observed recently in a comparable case, "in the very document that charges him as removable, the Government checked the box stating that Petitioner is 'an alien present in the United States who has not been admitted or paroled,' rather than 'an arriving alien,' essentially acknowledging that Petitioner is not an 'arriving alien.'" *Quispe*, 2025 WL 2783799, at \*6 (internal citations omitted); *see also Hasan v. Crawford*, 800 F. Supp. 3d 641 (E.D. Va. 2025) ("[T]he federal respondents' treatment of [petitioner] since he arrived in the United States unequivocally demonstrates he is detained pursuant to § 1226(a)."). "Petitioner was thus removed from the process for expedited removal and placed into the 'usual removal process' under Section 240, codified at 8 U.S.C. § 1229a." *Qasemi*, 2025 WL 3654098, at \*4 (*citing Thuraissigiam*, 591 U.S. at 108).

For these reasons, 8 U.S.C. § 1225(b)(1)(B)(ii)'s mandatory detention provision providing that an individual found to have a credible fear of persecution "shall be detained for further

consideration of the application for asylum," has no application at this point; [4] and apparently was never viewed as applicable, as Respondents, after Petitioner's positive credible fear determination and ostensibly "consider[ing]" further the issue of asylum under Section 1225(b)(1)(B)(ii), vacated the expedited removal order, placed him into removal proceedings under Section 1229a, and released him on parole.

Respondents argue in substance that because Petitioner's parole had expired he automatically became again subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). In support of that position, Respondents rely chiefly on two Board of Immigration Appeals (BIA) opinions, *Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019), concluding that noncitizens transferred from expedited removal proceedings to full removal proceedings after demonstrating a credible fear are ineligible for release on bond and must be detained pending removal proceedings, unless they can demonstrate eligibility for release on humanitarian parole, and *Matter of Q. Li*, 29 I. & N. Dec. 66, 69-70 (BIA 2025), finding that aliens detained under 8 U.S.C. § 1225(b) who are paroled shall forthwith return or be returned to the custody from which they were paroled upon termination of parole. The Court is not bound by those agency interpretations, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01, 406 (2024) (interpretation of the meaning of a statute

---

[4] Even if somehow Section 1225(b)(1)(B)(ii) could be applied to Petitioner at this point, it is unclear what that provision requires. In that regard, the Supreme Court has stated in *dicta* that this provision mandates the noncitizen's detention "until immigration officers have finished 'considering' the application for asylum," but neither the statute, nor the Supreme Court, makes clear what that "consideration" entails and when it ends. *See Jennings*, 583 U.S. at 299. Given the nature of § 1225, titled "Inspection by immigration officers; *expedited* removal of inadmissible arriving aliens; referral for hearing," the Court is unconvinced that Congress intended for it to apply to individuals such as Petitioner who have had their credible fear positively determined by an asylum officer, and thereafter referred for full removal proceedings, without any asylum petition pending. *See Qasemi v. Francis*, 2025 WL 3654098, at *4 n.4 ("Section 1225(b)(1) itself is ambiguous as to the terminal point of mandatory detention. . . . [The] language might be understood to require only that detention is mandatory if DHS retains jurisdiction over the application, in which case it 'shall conduct' an asylum interview itself 'within 45 days of the applicant being served with a positive credible fear determination.'") (citing 8 C.F.R. § 208.9(a)(1)); *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 69 n.7 (D.N.H. 2025) ("§ 1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process.").

belongs to the "independent judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities"); and finds their reasoning unpersuasive.

Section 1182(d)(5)(A) provides that when the purposes of such parole have been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Notably, however, the statute "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 2025 WL 3654098, at *10 (emphasis in original). Nor does the instruction that Petitioner must "be returned to the custody from which he was paroled" necessarily mean that the "custody" contemplated was intended to denote physical detention. *See id.* (Custody, as opposed to detention, "concerns any status under which a person or thing is under 'the care and control of [another] for inspection, preservation or security,'" and when used "alone refers to 'restraints on a man's liberty, restraints not shared by the public generally.'"). In this instance, returning Petitioner to the government's "custody," his parole having terminated, simply means that the Petitioner is to "be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* As discussed above, Petitioner's status as an "applicant for admission" is not that of an "arriving alien" under Section 1225 but rather a noncitizen already present in the United States, whose "custody" continues under Sections 1226(a). *Id.* at *11. ("Putting these pieces together, the termination by expiration of [the petitioner's] parole returned him to the "custody" of DHS pursuant to the INA. Because he was paroled, and because he is not an arriving [noncitizen], he is no longer subject to the mandatory detention provision of Section 1225(b)(1)."); *see also Ivonin v. Rhoney*, No. 25-cv6673, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026) ("[W]here a petitioner's re-arrest was not

a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226."); *Montiel v. Raycraft*, No. 25-cv-1610, 2026 WL 32076 (W.D. Mich. Jan. 6, 2026); *Abdirashid H. M. v. Noem*, No. 25-cv-4779, 2026 WL 127698 (D. Minn. Jan. 9, 2026); *Daza v. Albarran*, No. 25-cv-10214, 2026 WL 81518 (N.D. Ca. Jan. 12, 2026).

Having concluded that Petitioner is detained pursuant to § 1226(a), Petitioner's continued detention under section 1226 without a bond hearing violates his substantive and procedural due process rights. *See Quispe*, 2025 WL 2783799, at *7–9.

## IV.    CONCLUSION

For the reasons stated above, the Petition is GRANTED and it is hereby

**ORDERED** that Respondents provide Petitioner with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the date of this Order; and it is further

**ORDERED** that if Petitioner is granted bond by an Immigration Judge, Respondents are ENJOINED from denying bond to Petitioner, or from invoking the automatic stay provision pursuant to 8 C.F.R. § 1003.19(i)(2); and it is further

**ORDERED** that Respondents file a status report with this Court within three days of the bond hearing, stating whether Petitioner has been granted bond and, if his request for bond was denied, the reasons for that denial.

The Clerk is directed to send copies of this Order to all counsel of record.

March 12, 2026
Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge